JOHN L. PEAY, SHERIFF, v. E. W. TALBOT & BRO.
JOHN L. PEAY, SHERIFF, v. JOHN J. DIMMITT.

1. The word *annual* in an act of the Legislature is not necessary to continue it in force from year to year.
2. Section 4 of 9th Article of the State Constitution provides that the Legislature shall establish a uniform *system* of public free schools. Such system requires a yearly provision for their support.
3. Where a statute authorizes the performance of an act which from its nature is to be performed yearly, further enactment is unnecessary to continue the power.
4. The levy of the one per cent. school tax for the second year, 1872, was authorized by law.

APPEAL from Williamson. Tried below before the Hon. E. B. Turner.

The court below granted and perpetuated an injunction against the levy of the one per cent. school house tax for the year 1872, being a levy for the second year.

We give the opinion of the district judge for statement of the case, and it was also filed by appellee as their brief.

*Sheeks & Sneed*, for appellant.—The only question presented by these records is, whether the power of the boards of school directors was exhausted by a single levy

of this tax—the proceeding below being to restrain the collection of a second levy.

When we consider the object of this special tax, and understand that the power to levy it was given to supplement and make full the other powers given under the Constitution, for the purpose of maintaining a system of public free schools, we are led to the conclusion that it was intended to leave this power standing, to be exercised or not, as might be demanded by the exigences of each district, from time to time.

It is by the right to levy this tax, again and again, every year, if need be, and by this right only, that school houses may be built, and when burned down, rebuilt, and money always obtained to "insure the education" (free of charge) "of all the scholastic inhabitants of the State," despite lawless and other unfriendly acts, from the lowest grade to the higher offense of arson.

We see nothing in the phraseology of the law forbidding the idea that this, though a special tax, may be levied annually, if the other means furnished the boards of directors are inadequate to provide school houses and sustain the public schools. What becomes of the constitutional provision adopted in the interests of the children of the State, if it is left within the power of the lawless to defeat these measures by a few acts of midnight incendiarism?

This construction is necessary to complete and maintain the system, and is at war with no rule of statutory construction known to us.

*E. W. Talbot*, for himself, filed as brief—

*Opinion of Judge E. B. Turner.*—Complainant alleges that the said board levied a tax of one per cent. for the year 1871 ; that complainant paid the entire tax of one

per cent. on all his property in the year 1871.  He alleges that the assessment for 1872 is unauthorized by law ; that the sheriff of the county, who is *ex officio* collector of taxes, is threatening, under the direction of the board of school directors for said county, to distrain property of the complainant, and to sell the same, etc.; that the large amount of the tax levied by said board, which the sheriff is proceeding to collect, leaves the complainant remediless, because the sheriff is not able to respond in damages to the taxpayers of the county, and inasmuch as the said tax is wholly without warrant of law the sureties of the sheriff are not responsible.  Complainant sought and obtained an injunction from the judge of this court on the seventh day of October, A. D. 1872.  The defendant now appears, by his attorney, and demurs to the petition, and moves that the injunction be dissolved, (1) "For want of any equity in the bill such as entitles a party to the extraordinary remedy of injunction," and (2) "Because the tax so levied is legal and collectable, and therefore the sheriff is but discharging a legal duty."

The question which arises grows out of the law of April 24, 1872, Section 5, of the laws of the first session of the Twelfth Legislature.  The section reads as follows :

"The available school fund liable to appropriation for the support of the public schools is hereby declared to be all interest which has accrued or may hereafter accrue to the school fund from railroads or otherwise since the thirteenth of March, 1870 ; one-fourth of all the *ad valorem* and occupation taxes assessed since that date, and such other taxes as have been or may be provided by law for the support of public schools.    *    *    The directors of each school district shall have authority to levy a tax of not exceeding one per cent. for the purpose of building school houses and maintaining schools in their respective school districts ; and the manner of the

collection of this tax shall be prescribed by the Board of Education."

Counsel for the defendant seek to sustain the action of the board of directors and justify the sheriff on the ground that the board, under this law, have the right annually to assess this tax. In other words, the necessity of the case demands of the courts that they shall insert the word "annual" in the section referred to between the words "to" and "levy."

＊  ＊  ＊  ＊  ＊  ＊  ＊

It is said that there is a necessity for the collection of this tax, because the Legislature is charged with the duty of "making suitable provision for the support and maintenance of a system of public free schools, for the gratuitous instruction of all the inhabitants of this State between the ages of six and eighteen years." (See Art. 9, Sec. 1, State Constitution.) The Constitution provides for the compulsory attendance upon the public schools for at least four months in the year. The Legislature has also provided for four months compulsory attendance of the scholastic inhabitants of the State. Further than this, the duration of the schools per annum is nowhere provided for ; and inasmuch as compulsory attendance is a rule engrafted upon the system, it may be perhaps fairly inferred that the Legislature did not intend, upon the inception of the experiment, to carry the schools beyond that period of time ; at any rate, the only period named in the law is the four months per annum, during which time all the children within the scholastic age are required to attend.

It is true that the Board of Education have established a rule requiring the schools to be taught ten months in the year. Now, whilst it will be readily conceded that the Board of Education may make rules and regulations which are obligatory in the carrying into effect the several

provisions of the Constitution and laws of the State upon the subject of schools, it will not be seriously contended that this board can impose any new duty or obligation upon the citizen, nor can they relieve any one from a duty enjoined by law. If this be correct, and the Legislature has not provided for more than four months per year, then this rule and regulation of the Board of Education could not impose the duty of sustaining schools for a longer term, and compel the payment of any tax looking to that end. It follows, then, that if the tax now sought to be collected was a provision made by the Legislature itself, instead of claiming vitality through a delegated power granted to the board of school directors, it could hardly be sustained upon the ground that the schools could not be sustained for ten months each year without the collection thereof; because the pertinent answer to that argument is, there is no obligation resting upon the Legislature beyond providing for four months, and they have not imposed a greater obligation upon the citizen than that imposed by the Constitution.

However sound the general proposition may be, that the Legislature is presumed to have intended to discharge a duty resting upon it by the Constitution, and therefore inasmuch as necessity requires the given construction such construction must obtain, that process of reasoning ceases to have force when we come to construe the acts of those upon whom no obligation rests, and who can do no act in the premises save such as is expressly delegated to them. Boards of school directors have no legislative powers save those expressly conferred by law, and no duties save those by law imposed. If this be true, why shall we say that the word "annual" shall be interpolated into their delegated power of taxation more than the word "monthly" or "quarterly"? The term necessity, when resorted to by the judiciary to justify a forced

construction, should bring with it no doubts with reference to its existence. Tyrants in every age have sought to shield themselves behind it, and at the same time claimed the right to be the judges of their own justification; and to my mind, to apply that course of reasoning to the action of this board would be violative of all principle.

Again, it is said that whenever the Legislature has levied taxes in order to carry on the government, and have omitted the word annual, the courts have said annual was intended; because the necessity existed, and the duty to provide for the necessity rested upon the Legislature. To this doctrine I subscribe, but I fail to see the analogy. We are not considering the act of the Legislature, who alone, in the absence of their approval or delegated authority, can levy taxes; nor are we considering aught but the act of a board with limited powers. If the argument of necessity should be allowed to have any weight in the case at all—which I do not think it should—how is this court to know that any necessity exists? I know no facts save those stated in the bill, which are admitted to be true; and when I look at the law I find a school fund provided, which the Supreme Court of the State are pleased to call munificent. How is this court to know but this fund is ample to put every scholastic inhabitant in this State into school for each and every year? There are no facts in evidence save those indicated, and I can supply none.

And now let us for a moment enquire into the organization of this board, for which so much power is claimed, and see if there is not in its very organism reasons to be found why they should not possess this vast power, equal to that which the Legislature exercises in providing for carrying on the entire State government, as one per cent. *ad valorem* is the State tax (one-fourth of which goes into the school fund). The Superintendent of Public In-

struction, with the advice and consent of the Governor, appoints the supervisors for each district. The term of office of the supervisors is not fixed by law, and they are removable by the Superintendent. The supervisors appoint the board of school directors, and their term of office is not fixed by law, and they are removable at the will of the supervisor. Now if the Superintendent directs the supervisor to cause the board of school directors to levy a tax of one per cent., and he refuses, he may be removed and another appointed who will ; and in his turn, if the board of school directors prove refractory and refuse to make the required levy, he may remove them and appoint others more subservient. So that in point of fact the whole power over the question of amount—if the right be granted at all—is in the hands of the Superintendent, only limited to one per cent. at one time. I cannot believe that such power as this was ever intended to be conferred upon any one man, more especially when the Superintendent of Public Instruction is one of the Board of Education who make the rules and regulations which create the necessity.

But let us look a little to the Legislature itself. It will be borne in mind that the Constitution sets apart as a "perpetual school fund lands and other property heretofore appropriated for the maintenance of public schools, all proceeds of the sale of public lands, one-fourth of the amount of revenue derived from general taxation, a poll tax of one dollar of all persons between the ages of twenty-one and sixty years, exclusively for the education of the scholastic inhabitants of this State;" and the Legislature has set apart the revenues derivable from such sources, as well as the interests on the debts due from the railroads, in accordance with the requirements of the Constitution, and declared that the proceeds shall be applied for the support of common schools.

The Constitution further provides for levying taxes to build school houses; and by reference to Section 5 of the act under consideration—this being the section which it is claimed gives the right of taxation now contended for—it seems to me that the Legislature, after declaring what the school fund should be, and knowing that as yet there was no express provision for the erection of the necessary school houses, added the clause now under consideration with a view to provide for that necessity; and I incline strongly to the opinion that the tax authorized to be assessed by the board of school directors was intended to be appropriated to the building of school houses, although the phraseology of the law is such, that if appropriated for the maintenance of schools in the respective districts, it cannot be said to have been misapplied. If we look in the index of this law, under the head "School houses," we find this reference: "Tax levied for district, etc.; page 59." In the general tax law of the same session, approved April 22, under general division as contained in the statute itself, headed "The tax for district school houses," we find the Legislature adopting words of similar import as when they define the object for which the one per cent. is to be levied in the law under consideration, and by express declaration limited the tax to the year 1871. Furthermore, after passage of this law, which was April 22, 1871, viz., May 30, 1871, the Board of Education adopted rules and regulations to govern these boards of school directors, and among those rules we find the following:

"Rule 3. After the organization of the board of school directors has been effected, they will proceed to levy the tax as prescribed in Section 5 of an act entitled 'An act to organize and maintain a system of public free schools in the State of Texas.'" And again:

"Rule 6. It shall be the duty of the school directors

to select sites on which to build school houses in their respective districts immediately after they have levied the tax, as prescribed by rule No. 3."

"Rule 7. After having selected sites, they will send information through the supervisor to the Superintendent, giving the number of children who live in the neighborhood of the different sites, and who will have to attend school at each place, and such other information as will enable the Superintendent to send plans for the different school houses to be built."

I refer to these facts, and to the phraseology of these rules adopted by the Board of Education, as showing the opinion entertained by them of the real object of this tax; and if indeed the real object was to build school houses, then we find a sufficient reason for refusing to interpolate the word annual, and we see why in the general tax law the tax provided for under the head of "Tax to build school houses," where similar words are used as in this section, the Legislature confined that levy to 1871. It may be said that neither the indexing of the laws, the division of the laws by putting a caption over the section, nor the fact that the general tax law where words of similar import are used by the Legislature, and yet have by express provision limited the right to make the levy only for 1871, nor yet the rules to which reference is made, promulgated as they were so soon after the passage of the law, are conclusive as to what the Legislature really intended. I think, however, they are indications which would make the more enthusiastic advocate for the construction sought by the defendant hesitate about interpolating the word annual into the law. It is already decided by the Supreme Court in the case of Kinney v. Zimpelman, that the tax authorized to be levied by the board of school directors is a special tax, and limited to one per cent. If this be so, I cannot see how the con-

struction now sought can be given—believing as I do that the Supreme Court will hold, as they have heretofore done, that this is a special law and a special tax of only one per cent. authorized under it, and that by the first levy the board for this county exhausted all its powers of levy and assessment; and believing as I do that the primary object was to enable the necessary school houses to be built in the respective counties.

The demurrer is overruled, the motion to dissolve the injunction refused. And upon motion of complainant's counsel, it is ordered that the injunction in this case be made perpetual.

WALKER, J.—These cases are appealed from the judgment of the District Court overruling demurrers to the petitions and perpetuating the injunctions. The object of the bills was to restrain the collection of the one per cent. school tax levied for the year 1872.

His honor the district judge has furnished, at the request of counsel, a printed copy of his opinion, which is filed by the appellees in argument of the case.

The court admits the correctness of our opinion in Kinney v. Zimpelman, and the only question raised in this case is as to the power of the school directors to levy the one per cent. tax yearly, and every year that public necessity may require it.

It is very true the law is not so worded as to expressly authorize the annual levy of the one per cent. tax, but we are far from supposing that the word *annual*, in an act of the Legislature, is necessary to continue it in force year after year. This word is not often found in acts of the Legislature, which are intended to continue in force until repealed; and reference being had to former laws will demonstrate this proposition. (See Paschal's Digest for the revenue laws passed 1837, p. 892; 1840, p. 910;

1842, p. 924; 1845, p. 933; 1846, p. 863; 1848, p. 943; 1850, p. 965.)

After a careful examination of this question we are of opinion that if the word annual, or annually, were found in an act of the Legislature of this kind, it would be an exception to the rule. The word is seldom used, except where it enjoins some act to be done or performed annually for an indefinite term of years; but where a law simply authorizes the performance of some act which in its nature is to be performed yearly, the direction as to its performance is very often omitted.

But the court seems to have been of opinion that it was not the intention or purpose of the Legislature to provide for maintaining a system of public free schools more than four months in each year.

Section 4 of the 9th Article of the Constitution provides that the Legislature shall establish a *uniform system* of public free schools throughout the State; and the following section provides that the Legislature, at its first session, or as soon thereafter as may be possible, shall pass such laws as will require the attendance on the public free schools of the State of all the scholastic population thereof for the period of *at least* four months.

This constitutional injunction upon the Legislature does nothing more than fix the minimum time during which the public schools must be kept up, but there is certainly nothing in this from which it can be deduced that the Legislature intended only to provide for the minimum time prescribed; such has never been understood to be the object of the law, and certainly there is no inhibition against any provision which the Legislature might make to keep the schools going the year round.

It is an answer to all this that the Legislature left the matter in the discretion of the school directors, and they

have seen proper to exercise it by levying the tax. We concur in much which has been said in his opinion by the district judge. It is supposing a case almost beyond the range of possibility for us to assume that everything enjoined by the Constitution or contemplated in the laws upon this subject had to be done in one year. The 4th Section of the 9th Article enjoins upon the Legislature the establishment of a *system* of free schools. Will it be contended that a law which was intended to carry out this constitutional injunction was to last but one year? The word *system* as used in the Constitution means an organized plan, an institution, something established for the use and benefit of the people, so long as the want of public education will continue.

Under the act touching this subject of the Thirteenth Legislature repealing the act of April 24, 1871, the question involved in these cases is comparatively unimportant to the public; but the importance of a correct decision by this court is in nowise diminished.

We hold then the judgment of the District Court was erroneous, and dissolve the injunction.

REVERSED.